In the Matter of the Application of the GRADE CROSSING AND TERMINAL STATION COMMISSION OF THE CITY OF BUFFALO for the Appointment of Commissioners to Apportion the Respective Amounts of Expense to Be Borne and Paid by the City of Buffalo and the Delaware, Lackawanna and Western Railroad Company of the Cost of the Elimination of Clinton Street — D., L. & W. R. R. Grade Crossing. (Proceeding No. 137.)

THE DELAWARE, LACKAWANNA AND WESTERN RAILROAD COMPANY, Appellant; CITY OF BUFFALO, Respondent.

Fourth Department, November 16, 1938.

*Louis L. Babcock* [*Harold S. Brown* of counsel], for the appellant.

*David Diamond, Corporation Counsel* [*Jeremiah J. Hurley, Assistant Corporation Counsel*], for the respondent.

LEWIS, J. The Delaware, Lackawanna and Western Railroad Company appeals from an order of the Special Term which denies a motion to confirm the report of a commission appointed pursuant to section 9 of chapter 345 of the Laws of 1888 (as amd. by Laws

of 1911, chap. 358, § 5), to apportion between the city of Buffalo and the appellant the cost of eliminating a railroad grade crossing at Clinton street in that city. The order sets aside the report, reserving to either party the right to apply for the appointment of a new commission.

A major portion of eliminating railroad crossings at street grade in the city of Buffalo was accomplished under authority granted by Laws of 1888, chapter 345, and amendments thereto including Laws of 1911, chapter 358. By those statutes the Legislature authorized commissioners named in the acts to enter into contracts with various railroads to carry out the elimination projects and declared such contracts to be "binding upon the city." Among other details it also defined the procedure by which the work to be done and the total cost thereof were to be apportioned between the city and the railroads. As our present inquiry goes to the question of apportionment of cost, the following material portion of section 9 of chapter 345 of the Laws of 1888 (as amd. by Laws of 1911, chap. 358, § 5) is quoted:

"§ 9. The commissioners may agree with any railroad * * * corporation interested * * * what portion of the work necessary to be done shall be done by any company or companies interested and what portion of the work shall be done by the city and what portion of the cost of the proposed improvement shall be paid by each. In case the commissioners and any company shall not agree upon the apportionment of the work or the cost of the proposed improvement between the city and any of the said companies, the commissioners by their chairman may apply to the Supreme Court at a Special Term thereof for the appointment of three commissioners to make such apportionment. * * *, The commissioners shall take the oath required by the Constitution; shall hear the proofs and allegations of the parties, reduce the testimony taken by them to writing, and they or a majority of them shall make a report in writing designating what portion of the work necessary to be done shall be done by the company or companies whose tracks render the work necessary, who shall not have agreed and what portion shall be done by the city, and the proportion of the cost of the proposed improvement to be paid by each."

In eliminating a grade crossing at Clinton street in 1925, conditions were such as to prompt all parties concerned to proceed at once with the physical work and leave until its completion the determination of the apportionment of total cost between the city and the railroad. The contract provided that regardless of a failure by the grade crossing and terminal station commission and the

railroad to reach an agreement as to the apportionment of cost, the city and railroad should each pay, in the first instance, the cost of the work it had engaged to do to complete the elimination. The provisions of the contract which are important to our decision are as follows:

" *Twentieth.* * * * (b) That the City of Buffalo and the Company shall each bear and pay such proportion of the total cost and expense of the work included in this contract, and such proportion of the consequential damages to property (referred to in Section Fourteen thereof) as shall hereafter be agreed upon by the parties hereto, or in the event of their failure to agree, as shall be finally fixed pursuant to the report of a Commission appointed by the Court as provided in Section 5 of Chapter 358 of the Laws of 1911,* or the final determination of the Court on an appeal therefrom. * * *

" (d) In the event that the parties hereto fail to agree upon the respective amounts of expense to be borne and paid by the City of Buffalo and the Company, it is agreed that upon demand by either party hereto an application shall be made for the appointment of a Commission as provided in Section 5 of Chapter 358 of the Laws of 1911, and the proportions of the cost and expense of the work which should be paid by the City of Buffalo and the Company, respectively, shall be fixed by said Commission, and when confirmed by the Court shall be paid by the said City of Buffalo and the Company in accordance with such order. It is understood that from the report of such Commission either party may appeal and that the payment to be made by each of the said parties is that proportion which is fixed by the final order of the Court."

Then follows the provision that a failure to agree upon an apportionment of cost shall not prejudice the rights of either party in any proceeding to be had before a commission appointed under the statute to fix such apportionment. Finally there is a declaration that the intent of the agreement was " to vest in the Court the powers to apportion between the City of Buffalo and the Company the entire cost incurred by either party, whether within or beyond the exterior lines of Clinton Street, which is made necessary for the execution of the work."

Upon the completion of the Clinton street improvement without an agreement by which its total cost could be apportioned, the grade crossing and terminal station commission invoked section 9 of chapter 345 of the Laws of 1888 (as amd. by Laws of 1911, chap. 358, § 5) (quoted above), and filed a petition with the Supreme

Court for the appointment of a commission to make such apportionment. In due time, after issues involving the constitutionality of the statute and the Statute of Limitations had been raised by the city's answer and determined adversely to its position (249 App. Div. 795; 275 N. Y. 548), the commission named by the court to apportion the cost of the project held hearings and filed the report which is the subject of this appeal.

In reaching a conclusion which is favorable to the commission's report we have considered first the peculiar function which the commission was called upon to perform — a function which we deem to be more legislative in character than judicial. True it is that the statute affords to the city and the railroad a tribunal where rights may be determined. But, unlike the usual litigated matter, there is no breach of duty by either party and no rights have been invaded by one party for which the other is called upon to respond in damages or otherwise. Neither party to this proceeding seeks damages and neither party has the burden of proof upon the question to be determined. Nor can an analogy be drawn between the commission's function, as outlined in the statute, and the function of a commission in a condemnation proceeding where, after a claimant's property has been taken by the exercise of the power of eminent domain, he seeks reparation which the law provides for his loss. Here a city and a railroad, in response to the demands of a declared public policy to eliminate grade crossings, have made large expenditures. The statute which declared that public policy also made provision for apportioning the cost of the work involved. Thus sanctioned by statute and in strict accord with an agreement signed by both parties, a duly appointed commission has conducted hearings to determine — as the statute directs — " The proportion of the cost of the proposed improvement to be paid by each." No standard was fixed by statute or contract and no formula or rule was suggested by either party by which that " proportion of the cost of the proposed improvement to be paid by each " could be determined with precision. The problem presented to both parties and to the commission was unusual.

The appellant railroad met that problem by giving proof of the physical conditions and the demands of traffic and public safety which existed at Clinton street prior to the elimination and afterward. This proof included evidence bearing upon the low annual cost of operating guard gates prior to 1925 and the higher annual cost of maintaining the new steel bridge structure, piers, abutments and embankments made necessary by the project. It proved the nature, extent and cost of the work involved in the improvement.

It proved that a large amount of fill in the new embankments would be subject to tax. It proved that the elevation of the tracks more than twelve feet above their former level would handicap the railroad in providing adequate freight service to private industries located in the vicinity of Clinton street.

The city in turn offered testimony covering the cost of the work to both parties and developed upon cross-examination of the railroad's witnesses information as to conditions which made the elimination advisable in the interests of public safety.

The commission rejected evidence offered by the city in the form of thirteen prior contracts for the elimination of other grade crossings which had been executed between 1889 and 1915 by the grade crossing commissioners and various railroads entering Buffalo. In offering these contracts counsel for the city stated that the sole purpose was to show " the general custom and practice that has taken place in the city from 1894 to 1925 in relation to the division of costs between the city and the railroad companies." We believe that, despite the wide range of proof which the peculiar character of this proceeding made competent, the commission properly rejected this evidence in view of testimony given by the chief engineer of the grade crossing and terminal station commission, who was called by the city and who admitted freely that all grade crossing eliminations differed widely in the problems they presented and in the conditions which led to each particular project. Such varied conditions may well have prompted the city and the particular railroads involved to take positions, upon the question of apportioning the total cost of the work, which differed widely from the position taken upon that subject by the appellant in this proceeding. It is hard to understand how an agreed percentage or apportionment of cost, which was arrived at under different conditions existing during an earlier period and which related to another railroad grade crossing, would be proper evidence to aid a commission in determining in 1936 the proper apportionment of the cost of work involved in the elimination of the Clinton street crossing.

For like reason we also approve the commission's ruling which sustained an objection to the following question addressed by the city counsel to one of its witnesses: " Q. * * * I will ask you to state what you consider, in percentage, as the fair division of the cost in the City of Buffalo of the Grade Crossings eliminated under the Buffalo Grade Crossing Law, as between the City of Buffalo and the Railroad Company? " The inquiry made no reference to the physical conditions and other factors which led to the Clinton street elimination in 1925 and which would affect the apportionment of its total cost. The question related to *all* improvements

made since the work of grade crossing elimination in Buffalo was commenced in 1889, without regard to conditions and problems which were peculiar to each project.

Believing that the record of proof forms a sufficient basis for the determination which the commission has made and that the requirement of the statute has been satisfied, we conclude that the order vacating the report of the commissioners should be reversed on the law, without costs, and that the motion to confirm the report should be granted, without costs.

All concur. Present — SEARS, P. J., CROSBY, LEWIS, CUNNINGHAM and TAYLOR, JJ.

Order reversed on the law, without costs, and motion to confirm the report granted, without costs.